*In re* SCHREYER, Bankrupt.

(*District Court, S. D. New York.* February 20, 1884.)

GUARANTY—CONSIDERATION—ASSIGNMENT OF MORTGAGE—INTENT OF PARTIES—BANKRUPTCY—PROOF OF DEBT.

Where V., a builder, agreed with G., owner, by contract in writing, to build the latter a house for $8,175, and G. agreed to pay B. therefor $8,175, lawful money, as follows: when topped out, $5,000, by the assignment of a bond and mortgage held by one S. on certain premises named, and $3,175 when the buildings were completed; and when the buildings were topped out, V. refused to proceed unless the bond and mortgage were guarantied by S., reasonable doubt having arisen as to the value of the mortgage, and S. having thereupon assigned the mortgage with his guaranty for the consideration of $5,000, expressed in the assignment, and the mortgage security having turned out worth-

less, and S. becoming bankrupt, a claim upon his guaranty being presented to the register by the representatives of V. after his death, and disputed on the ground that it was given without any actual consideration; and the attorney who drew the assignment having testified that S. stated at the time that he intended to make the mortgage as good as cash, and that V. ought to have his money: *held*, that the guaranty should be sustained, as given in accordance with the actual intention of the parties, as upon a modification of the original agreement to that effect, and as supported, therefore, by the consideration named in the assignment; and that the claim upon the guaranty should be allowed to be proved in bankruptcy against the estate of S.

In Bankruptcy.

*T. M. Tyng,* for Vanderbilt.

*A. O. Salter* and *John L. Lindsay,* for bankrupt.

BROWN, J. In the case of *Vanderbilt* v. *Schreyer,* 91 N. Y. 392, it was held to be competent for the defendant to show by parol evidence that the guaranty of the mortgage assigned by him to Vanderbilt was without consideration, although the guaranty was expressed in the instrument of assignment, stating a consideration of $5,000 for the whole transaction. Without in the least questioning the correctness of this decision, the counter proposition is also obvious: that it is competent for Vanderbilt also, or his representatives, to show by parol evidence that there was a consideration for the guaranty. Had the original agreement between Gebhardt and Vanderbilt, whereby the latter was to take an assignment of the mortgage in part payment for erecting the building contracted for, provided that the mortgage should be guarantied by the assignor, no question could exist that the consideration of $5,000, mentioned in the assignment of the mortgage, would be deemed a consideration for the guaranty as well as for the assignment. So, also, if such had been the actual intention of the parties to the original agreement, although the agreement, as reduced to writing, omitted the stipulation for the guaranty, there could be no question that the guaranty, when given in execution of the actual agreement and understanding of the parties, would be deemed a part of the original agreement, and would be sustained by the same consideration named in the written assignment of the mortgage, of which the guaranty forms a part. That, in substance and effect, is what the evidence of McAdam, though brief, sufficiently shows to have been the fact. He testifies that Schreyer, when directing him to draw the assignment, told him that there was a difficulty with Vanderbilt about the value of the mortgaged property; that he, Schreyer, intended to make it as good as money, and therefore ordered his guaranty to be inserted on the agreement; that on the next day, when Schreyer called to execute the assignment, it was all read over to him, and that he then said the guaranty was right, and that he intended to make the mortgage as good as money; that Vanderbilt's work was well done, and that he ought to have his money. That it was the intention of Vanderbilt to have the equivalent of money there can be no doubt, so far as Schreyer's guaranty could make it so. The case is one, therefore, in which both the parties

represented here agree as to what the intention was. Schreyer had received from Gebhardt the full amount of the mortgage in money, or its equivalent. The written agreement between Gebhardt and Vanderbilt was therefore defective in not fully expressing the actual intention of these parties as to the transfer of the mortgage. In a court of equity, if such a mutual intention was admitted, the agreement would be reformed by inserting the proper provision requiring Schreyer's guaranty. The case is one in which the maxim of equity is applicable, that that will be deemed done which ought to have been done; namely, the constructive insertion in the original agreement of a provision for the guaranty of the mortgage by Schreyer, according to the actual intention.

The agreement itself contains strong evidence that Vanderbilt was to have the equivalent of money. He first contracts to build a house, not for a bond and mortgage, whatever they may be worth, but for so much *money*, viz., $8,175; next, Gebhart agrees to pay him therefor that same amount of *money;* and he finally agrees to pay Vanderbilt $5,000, by Schreyer's assignment to him of the bond and mortgage in question. Had the agreement been to pay $5,000 by the delivery of a certain horse, instead of assigning a bond and mortgage, and the horse had died before the time of delivery, it is well settled that Gebhardt could not have tendered the dead animal in payment. In such a case the law presumes conclusively that the intention of the parties was the delivery of a living horse, and not of a dead carcass. So, if at the time when this bond and mortgage were to be assigned they had become utterly worthless, through the bankruptcy of the bondsman, and the cutting off of the lien of the mortgage by the foreclosure of prior mortgages, the presumption of law would, I think, have been equally conclusive that Vanderbilt was entitled to an existing bond and mortgage, having value, and not to two worthless pieces of paper. The law looks at the intention of the parties, to be gathered from the agreement itself, or from the surrounding circumstances.

In the present case, Vanderbilt might also have shown that he was deceived in the agreement to take the mortgage; or that it was agreed to be guarantied; or that he was to take no risk of depreciation between the time of the contract and the time of the assignment. The written agreement is silent as to who should bear the risk of such depreciation meantime. But the agreement shows so clearly a general intention to give the equivalent of money in the assignment of the bond and mortgage, that an ambiguity arises concerning the risk of depreciation, such, as it seems to me, would admit parol evidence even to supply the defect in the written agreement. The evidence shows that Vanderbilt refused to take the assignment of the mortgage without additional security, and stopped work on the buildings. He is dead, and his side of the controversy cannot now be fully known. But as the mortgage was found, not long after, to be worth-

less, there was evidently just ground for Vanderbilt's hesitation. I see no reason to question the fact that whatever dispute or controversy there was at the time was a *bona fide* controversy, based upon probable grounds, on Vanderbilt's part. An adjustment of such a controversy, made by the parties themselves, must be presumed *prima facie* to have been made in accordance with their actual, original intention; and this intention is moreover shown, by the testimony of McAdam, to have been in accordance with the setttlement made. It was at all times competent for the parties to modify their original agreement by adding a new clause providing for the guaranty. Such a modification would have been sustained as part of the original intention. No other consideration than that intention would have been necessary to sustain it. When an adjustment of a *bona fide* controversy on such a point has been fully executed, it should be sustained as being, *prima facie*, done upon a modification of the original written contract to accord with such intention; precisely as if the original agreement had at the same time been modified accordingly. Schreyer, it is true, denies the statements of McAdam; but the latter is sustained by the evidence of the acts and conduct of Vanderbilt, and his testimony should, I think, be followed.

For these reasons the proof of debt on the guaranty is directed to be allowed.